UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES TRUST CO., N.A., in its capacity as Plan Administrator and Trustee of the Arthur D. Little, Inc. Employees' MDT Retirement Plan,<br><br>Plaintiff,<br><br>v.<br><br>KARL P. FAGANS, and GARY BECK,<br><br>Defendant. | CIVIL ACTION<br>No:   05cv10013-WGY |

**MEMORANDUM OF FACT AND LAW IN SUPPORT OF DEFENDANT KARL P. FAGAN'S OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND HIS CROSS-MOTION FOR <u>REMOVAL OF DEFAULT</u>**

Defendant Karl P. Fagans ("Mr. Fagans") hereby submits this Memorandum of Fact and Law in support of his Opposition to the Motion of Plaintiff United States Trust Co., N.A. ("US Trust") for entry of default judgment and his Cross-Motion for Removal of Default.[1]

---

[1] Mr. Fagans, a resident of North Carolina, has asserted a lack of personal jurisdiction as an affirmative defense in his Answer and Jury Demand. He now appears specially for the purposes of seeking removal of the default against him and opposing US Trust's Motion for Entry of Default Judgment. Mr. Fagans asserts that his appearance for this purpose does not constitute a general appearance and does not subject him to the jurisdiction of the Court.

I.  **INTRODUCTION**

US Trust is the trustee and plan administrator of the Arthur D. Little, Inc. ("ADL") Employees' MDT Retirement Plan (the "Plan"), which is an employee retirement plan governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.  Mr. Fagans is a former employee of ADL, a Massachusetts corporation based in Cambridge, and is now retired after 27 years of service.  US Trust contends that "overpayments" of benefits were made to Mr. Fagans in 2002, and alleges that it is entitled to repayment of those funds by Mr. Fagans.  Mr. Fagans, a former member of ADL's Deferred Compensation Program Committee, denies that he received "overpayments" and asserts that his inquiries to US Trust for information about the precise nature of its claims have been ignored.  Moreover, Mr. Fagans asserts that the funds US Trust seeks to recoup are no longer in his possession and have long been spent on the precise purpose for which they were intended:  his retirement.

US Trust now seeks to obtain a Default Judgment against Mr. Fagans despite the fact that Mr. Fagans's current counsel promptly filed an Answer in this action after learning that default had been entered and despite the fact that US Trust's counsel represented that the submission of an Answer would moot the default proceedings.

Mr. Fagans opposes US Trust's Motion for Entry of Default Judgment and cross-moves for removal of default in this matter pursuant to Fed. R. Civ. P. 55(c).  As grounds for its Opposition and Cross-Motion, Mr. Fagans asserts that there is "good cause" for removal of default because, inter alia: (i) Mr. Fagans attempted to respond to the instant litigation on a pro se basis; (ii) even though counsel for US Trust were well aware of a mailing address for Mr. Fagans, they did not serve him with US Trust's Application for

Entry of Default; (iii) US Trust has not been prejudiced in any way by Mr. Fagans's delay in answering the Complaint; and (iv) Mr. Fagans has highly meritorious defenses in this matter, including lack of subject matter jurisdiction, that are likely to result in dismissal of this case.

## II.  FACTS AND PROCEDURAL HISTORY

After working at ADL for 27 years, Mr. Fagans retired in 1999.  See Affidavit of Karl P. Fagans ("Fagans Aff."), ¶ 1, submitted herewith.  He first moved to his home in Martha's Vineyard (the "Vineyard") and then to his current home in Chocowinity, North Carolina.  Although Mr. Fagans maintains his Vineyard home, he has only spent a few weeks there during each of the last several years.  Id.  Currently, Mr. Fagans is a permanent resident of North Carolina.  Id.

At the time of his retirement, Mr. Fagans rolled a substantial portion of his retirement fund with the Plan into an Individual Retirement Account (an "IRA").  Id., ¶ 3.  He elected to receive the remaining portion of his Plan funds in bi-annual installments.  Id.  As of June 30, 2002, Mr. Fagans's retirement fund with the Plan had been exhausted, and showed a balance of $0.00.  Id.  He has not received any payments from the Plan since June 2002.  Id.

In or about July 2002, US Trust sent a letter to Mr. Fagans stating that he had received an excess distribution under the plan of $18,434.32.  Id., ¶ 4.  Mr. Fagans did not believe this to be the case, and wrote to US Trust on or about October 21, 2002 to request more information.  Id.  Mr. Fagans specifically requested the Plan documents in force as of particular dates as well as certified financial statements concerning the plan value and the values of his accounts on various dates.  Id. Mr. Fagans did not receive a

response to his letter and the only information he has received is an email purporting to show balances and deductions from his account. Id.

On or about November 25, 2002, Mr. Fagans again wrote to US Trust requesting more information about its claim. Again, his letter was ignored.

In or about May 2004, Mr. Fagans received a letter from the law firm of Palmer & Dodge, LLP[2] demanding payment on behalf of US Trust in the amount of $18,434.32 and claiming that Mr. Fagans had engaged in a "willful and wrongful conversion of funds." Id., ¶ 5. The May 2004 letter from Palmer & Dodge claimed that Mr. Fagans's failure to pay the demanded amount imposed "damages and losses" on the Plan. On or about May 7, 2004, Mr. Fagans wrote to the lawyer at Palmer & Dodge, enclosing copies of his 2002 letters to US Trust and asking when his requests would be addressed. Id. Additional correspondence among Mr. Fagans, his then-attorney, and US Trust's counsel ensued. Id.

On or about January 4, 2005, US Trust initiated the instant lawsuit, inexplicably seeking a total of $43,434.32 in alleged "overpayments." See Court's Docket Report, entry #1. Nearly two months later, in late February 2005, US Trust's current counsel sent Mr. Fagans a Request for Waiver of Service of Summons, with which Mr. Fagans complied, signing the document on or about March 3, 2005. Fagans Aff., ¶ 6. US Trust did not file the Waiver with the Court, however, until May 2, 2005 -- five months after filing the Complaint. Docket Report, entry #4.

On or about August 9, 2005 Mr. Fagans sent a letter to the Clerk of the Court, apologizing for his delay in filing an Answer, stating that he could not afford to hire

---

[2]  Palmer & Dodge (now Edwards Angell Palmer & Dodge LLP) is not currently representing US Trust in this matter.

counsel to defend him in this matter, seeking information about how to file an Answer, and stating the facts he deemed relevant to the situation. Fagans Aff., ¶ 7. See also Docket Report, entry #5.

Mr. Fagans received no response to his letter, neither from the Court, nor from US Trust's counsel. Fagans Aff., ¶ 8. Other than obtain a waiver of service and file it, US Trust did nothing whatsoever to prosecute this case between its commencement in January 2005 and June 16, 2006 when it filed its Application for Entry of Default. Despite the fact that Mr. Fagans's waiver of service and his letter to the Court had been received and docketed, and US Trust was, thus, well aware of Mr. Fagans's mailing address, US Trust did not serve its Application for Entry of Default upon Mr. Fagans.

Meanwhile, in March 2006, Mr. Fagans retained Andrea Peraner-Sweet of Sally & Fitch LLP to represent him in this action. Although Ms. Peraner-Sweet was hesitant to file an Answer for fear of "rocking the boat" in a matter that US Trust apparently had no intention of prosecuting, she, nonetheless, determined that doing so was the best course and prepared a draft Answer.

On or about June 19, 2006, counsel for US Trust requested that the Court issue a Notice of Default to Mr. Fagans. See Docket Report, entry #7. Counsel for US Trust again failed to serve Mr. Fagans with its request. On or about Friday, June 23, 2006, Mr. Fagans received the Court's Notice of Default and promptly faxed it to Sally & Fitch in Boston. This was the first time Mr. Fagans had heard from either US Trust or the Court in this matter since February 2005 when he received the request for a waiver of service. Fagans Aff., ¶ 8. At the time, Ms. Peraner-Sweet was on vacation in Switzerland. Due to a combination of the press of business, innocent oversight, and legitimate concern about

whether re-starting the apparently dormant litigation was in the client's best interests, an Answer to the Complaint had not been filed prior to Ms. Peraner-Sweet's departure.

Ms. Peraner-Sweet's colleague, Jonathan W. Fitch, received Mr. Fagans's facsimile and promptly contacted US Trust's counsel, Joseph Hardcastle, regarding the litigation. Mr. Fitch requested that, as a professional courtesy, Mr. Hardcastle take no further action concerning the default until Ms. Peraner-Sweet returned from vacation. Mr. Hardcastle was unwilling to do so, and stated that pursuant to this Court's Standing Order, he needed to file a motion for default judgment the following week. Mr. Hardcastle stated, however, that he believed counsel for Mr. Fagans could simply file an Answer and, thereby, "moot" the default proceedings.

Accordingly, another attorney at Sally & Fitch appeared on behalf of Mr. Fagans and filed an Answer on his behalf on Tuesday, June 27, 2006. See Docket Report, entry #11.[3] The next day, despite Mr. Hardcastle's prior statement that an Answer would "moot" the default proceedings, counsel filed the instant Motion for Entry of Default Judgment.

## II.   ARGUMENT

Pursuant to Fed. R. Civ. P. 55(c), a court may set aside an entry of default under Fed. R. Civ. P. 55(a) "for good cause." See Fed. R. Civ. P. 55(c); Coon v. Grenier, 867 F.2d 73, 75-76 (1989) (1st Cir. 1989). The standard is a "liberal one," and is less

---

[3] Mr. Fagans acknowledges that some authorities hold that a motion for leave to file an answer late or to remove a default should be presented prior to filing an Answer in a situation such as the one before this Court. See CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL. FEDERAL PRACTICE AND PROCEDURE, Vol. 10A, § 2692. Given the lack of an express prohibition against such a filing in Fed. R. Civ. P. 55, and given Mr. Hardcastle's representation that filing an Answer would be an agreeable procedural step, counsel for Mr. Fagans simply sought to cure the default as quickly as possible by filing an Answer. To the extent a motion for leave to file a late answer is required, Mr. Fagans's Cross-Motion to Remove Default should be construed as including such a request.

stringent than the standard applied for vacating a default judgment. See Coon, 867 F.2d at 76. The factors to be considered by the Court in considering whether "good cause" is present under Rule 55(c) include whether (1) the default was willful, (2) plaintiff would be prejudiced by setting aside the default, and (3) a meritorious defense is presented.[4] Id. at 76 (citation omitted). Moreover, "an action will be dismissed despite the entry of a default when it appears that the court lacks subject-matter jurisdiction or personal jurisdiction over the defendant." See CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL. FEDERAL PRACTICE AND PROCEDURE, Vol. 10A, § 2696 (1998).

When considering a motion for entry of default judgment under Fed. R. Civ. P. 55(b), a Court may consider a number of factors, including: whether material issues of fact are involved in the case; whether the plaintiff has been prejudiced by the delay; how harsh an effect the judgment would have; and whether the default was caused by good-faith mistake. Id. "Plaintiff's actions may also be relevant; if plaintiff has engaged in a course of delay . . . the court may determine that a default judgment would not be appropriate." Id. Additionally, "the good or bad faith of the parties may be one of the most important factors in deciding motions under Rule 55(c)." Id. at § 2693.

Both the determination regarding whether to remove the entry of default and the determination regarding whether to enter default judgment are within the sound discretion of the Court. Id. at § 2685. "Since the law dislikes judgments by default, courts generally would prefer to deny plaintiff's application in favor of a trial on the merits." Id. at §2696.

---

[4] "The 'meritorious defense' component of the test for setting aside a default does not go so far as to require that the movant demonstrate a likelihood of success on the merits. Rather, a party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Coon, 867 F.2d at 77.

### A. The Default Was Not Willful.

As described above, Mr. Fagans, in good faith, attempted to participate in this litigation and resolve the instant dispute. Prior to initiation of suit, Mr. Fagans tried to engage with US Trust and its prior counsel and found that they were unwilling to provide him with basic information about the bases for US Trust's claim. When he was asked to sign a Waiver of Service of Process, Mr. Fagans did so. Then, while living in North Carolina and working without the benefit of counsel, Mr. Fagans sent a letter to the Court with information in response to the Complaint. He explained that he could not afford Boston counsel in the matter, and asked for help with the procedure involved. Mr. Fagans's actions demonstrate a good faith attempt to respond to the Complaint and participate in the litigation.

By the time Mr. Fagans engaged counsel in March 2006, US Trust had done <u>literally</u> <u>nothing</u> to prosecute the case in nearly a year. US Trust's last contact with Mr. Fagans had been in March 2005 when Mr. Fagans signed the Waiver of Service. US Trust's last filing with the Court had been in early May 2005 when it filed the signed Waiver of Service. The length of the delay between Mr. Fagans's engagement of counsel and the filing of an answer was unintentional, due to the press of business, and occurred in a context in which: (i) the case had been completely dormant for nearly a year; and (ii) counsel properly expected that if anything occurred in the case, her client would be served with notice of same.

Once Mr. Fagans's counsel learned of the entry of default, they moved as quickly as practicable to cure it -- having received notice of the default on a Friday, counsel appeared and filed an Answer and Jury Demand on the following Tuesday.

### B.   Plaintiff's Conduct Weighs Against Entry of Default Judgment

As described above, US Trust first demanded that Mr. Fagans make payment to it in July 2002. After making demand, US Trust either ignored Mr. Fagans's requests for more information, or responded in an incomplete and cursory fashion. In May 2004, US Trust's former counsel sent Mr. Fagans a threatening letter, which, ignoring Mr. Fagans's prior good faith requests that US Trust provide him with data backing up its claim, and ignoring the fact that any purported error in disbursements was US Trust's fault (not Mr. Fagans's), accused him of "willful and wrongful conversion of funds."

In January 2005, US Trust initiated suit, attempting to hale Mr. Fagans, a retiree settled in North Carolina, into federal court in Boston on a purported $43,000 claim. As emphasized above, from January 2005 to June 2006, US Trust did <u>nothing</u> to prosecute this case except obtain a Waiver of Service of Process and file it with the Court.

More recently, US Trust's current counsel sought entry of default and requested a notice of default without serving Mr. Fagans with notice of same. This might be unremarkable were it not for the fact that US Trust had obtained a Waiver of Service of Process from Mr. Fagans, and was, thus, well aware of a mailing address by which to provide him with copies of its communications with the Court.[5]

Additionally, US Trust's counsel would not agree to a "standstill" in the matter for a short period of time to allow Ms. Peraner-Sweet to return to the country to handle the situation. Further, after representing to Mr. Fitch that he believed simply filing an answer would "moot" the default proceedings, US Trust's counsel filed a Motion for Entry of Default Judgment the very next day after Mr. Fagans filed his Answer.

---

[5]   Mr. Fagans had also copied US Trust's counsel on his August 9, 2005 letter to the Court.

In light of Plaintiff's conduct in this matter, Mr. Fagans's failure to file a formal response more promptly should be excused.

### C. Lack of Prejudice to US Trust.

Given the facts described above, there can be no doubt that there is absolutely no basis for a finding of prejudice against US Trust arising out of Mr. Fagans's failure to answer the Complaint more quickly. Between the summer of 2002 and the winter of 2005, US Trust sat on its rights and did not file suit. Instead, it simply sent a series of letters seeking to extract payment from Mr. Fagans without providing him with sufficient information to allow him to assess the merits of US Trust's claim that it had made an error.

Once US Trust filed suit, it, again, did little to prosecute its claim. It requested and received a Waiver of Service of Process from Mr. Fagans (nearly two months after filing), and then ignored the case for nearly one year, until it sought entry of default without copying Mr. Fagans.

Mr. Fagans's failure to answer the Complaint more quickly has not changed US Trust's status in this litigation one whit. It has not impaired US Trust's ability to take discovery or recover on the merits of the case, or to collect on a judgment. The retirement funds in question, paid out to Mr. Fagans in 2002, were dissipated well before January 2005 when US Trust filed suit.

### D. Mr. Fagans's Meritorious Defenses.

Finally, this Court should deny the Plaintiff's Motion for Entry of Default Judgment and should allow Mr. Fagans's Cross-Motion for Removal of Default because Mr. Fagans has excellent defenses in this case, some of which may likely result in an

outright dismissal of the Complaint. Mr. Fagans's defenses are described in detail below. In summary, they are:

> Under current US Supreme Court case law, US Trust has no claim against Mr. Fagans under ERISA because the type of claim it has brought and the relief it seeks are not "equitable" in nature.
>
> There is no common law cause of action under federal law in this situation. To the extent the Complaint asserts a state law common law cause of action, the amount in controversy for diversity jurisdiction is not met.
>
> Even if US Trust has stated a claim under ERISA or federal common law, US Trust will not be able to prove that "overpayments" were made.[6]

**1.      No Cause of Action Exists Under ERISA.**

The first count of US Trust's Complaint is for "Recovery of Plan Overpayments Pursuant to 29 U.S.C. § 1132(a)(3)." See Complaint at p. 4. The cited U.S. Code section is a portion of ERISA, which states:

> A civil action may be brought--
>
>    (3) by a participant, beneficiary, or **fiduciary** (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate **equitable relief** (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . .

29 U.S.C.A. § 1132(a)(3) (ERISA § 502(a)(3))(emphasis supplied).

---

[6]     As previously noted, Mr. Fagans has asserted the affirmative defense of lack of personal jurisdiction. Mr. Fagans recognizes that discovery will be necessary to determine the viability of this defense.

In January 2002, in <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002), the Supreme Court considered the meaning of "equitable relief" in the context of an action brought by a plan fiduciary against a beneficiary under the above-quoted section of ERISA.  In that matter, Petitioner insurance company sought reimbursement for insurance proceeds it previously had paid to the Respondent, pursuant to the terms of the Plan that obligated the recipient of the insurance proceeds to repay these moneys if the recipient later recovered at least that amount in a settlement or judgment.  <u>Id</u>. at 207.

The Court (Scalia, J.) held that the Petitioner had stated no cause of action under ERISA because neither its claim nor the type of relief it sought were "equitable" under traditional concepts of that term.  <u>Id.</u> at 214.  In so ruling, the Court stated:

> 'Almost invariably . . . suits seeking [. . .] to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.' [. . . ] And '[m]oney damages are, of course, the classic form of *legal* relief.'

<u>Id.</u> at 210, <u>quoting</u>, <u>respectively</u>, <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 918-919 (1988) (Scalia, J., dissenting) <u>and</u> <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 255 (1993).

The Court went on to explain that an action for restitution could be an action at law or equity depending upon the basis of the claim and the nature of the relief sought. <u>Id.</u> at 212-13.  The Court drew "a fine distinction between restitution at law and restitution in equity."  <u>Id</u>. at 214.  Restitution in equity, the Court wrote, is "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could be clearly traced to particular funds

or property in the defendant's possession." Id. at 213. Where, however "'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust or an equitable lien upon the other property of the [defendant].'" Id. at 214, quoting RESTATEMENT OF RESTITUTION § 215 (1936) (citation omitted). In contrast, the Court explained that where a Plaintiff cannot assert title or right to possession of particular property, but nevertheless "might be able to show just grounds for recovering money to pay for some benefit the defendant has received from him," the plaintiff had a right to restitution at law. Id. at 213.

US Trust's purported ERISA claim is wholly legal in nature. First, US Trust's claim is essentially contract-based. It contends that under the operative Plan documents, Mr. Fagans was not entitled to all he received, and that he has a duty as a participant in the Plan, bound by the Plan documents, to return the amount of the "overpayment." Plainly, this is a "legal" claim under the language of Great-West. Indeed, US Trust's former lawyer admitted as much in his letter dated May 3, 2004, which stated: "Your failure to return the overpayment continues to impose damages and losses on the Plan and other participants in the Plan." LaRue v. DeWolff, Boberg & Assoc., Inc., 2006 WL 1668873 *5 (4th Cir. June 19, 2006), (stating that a party who "gauges his recovery not by the value of defendants' nonexistent gain, but by the value of his own loss" seeks legal, not equitable, relief).

Second, the Complaint does not indicate that the Trust is seeking equitable relief as to particular funds that are identifiable and in Mr. Fagans's possession. Instead, US Trust seeks to obtain a judgment that could be satisfied by whatever assets Mr. Fagans

may have.  In its prayers for relief, US Trust attempts to couch its request in the language of equity by asking the Court to "[e]njoin Mr. Fagans . . . preliminarily and permanently from refusing to return overpayments made by the Plan and held by [him]."  Using the language of equity, however, will not change what is essentially a legal claim into an equitable one:

> [A]n injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity.  Those rare cases in which a court of equity would decree specific performance of a contract to transfer funds were suits that, unlike the present case, sought to prevent future losses that either were incalculable or would be greater than the sum awarded.

Great-West, 534 U.S. at 213 (citations omitted).

Moreover, US Trust's claim cannot be considered equitable under Great-West for the simple reason that the funds US Trust wants "returned" have long since been dissipated.  See Fagans Aff., ¶ 9.  US Trust made the alleged "overpayments" in 2002.  US Trust did not file suit until January 2005.  US Trust never sought any type of pre-judgment relief as to any particular funds in Mr. Fagans's possession.  It is now 2006.  Mr. Fagans is a retiree who is living off of his retirement savings.  The funds US Trust claims should be "returned" are long gone and cannot be the subject of an "equitable" suit.  See Eldridge v. Wachovia Corp. Long-Term Disability Plan, 383 F. Supp. 2d 1367 (N.D. Ga. 2005) ("Where the subject funds have been received by a party and placed into that party's checking or savings account, rather than segregated into an identifiable fund

14

or location, the funds are not 'specifically identifiable' for purposes of section 503(a)(2).")[7]

In its most recent term, in Sereboff v. Mid Atlantic Medical Services, Inc., 126 S. Ct. 1869 (May 15, 2006), the Supreme Court expounded upon Great-West. Sereboff, like Great-West, involved a health insurer's attempt to collect reimbursement from the proceeds of a third-party tort settlement. See Sereboff, 126 S. Ct. 1872. In Sereboff, however, unlike in the case before this Court, the plaintiff sent correspondence to its insured purporting to establish a lien on the proceeds of the underlying tort lawsuit before settlement was reached. Id. When settlement was reached but the insured did not honor the "lien," the insurer sought a temporary restraining order and preliminary injunction requiring the defendant to set aside the amount of the claim for reimbursement from the settlement funds. See id. The Court approved a stipulation in which the defendants set aside in a specific account a certain amount of the settlement funds. See id.

In ruling that the Plaintiff had set forth a claim for equitable relief, the Court (Roberts, J.) reaffirmed that in order for a claim to be "equitable" under Section 502(a)(3) of ERISA, both the nature of the relief sought and the basis for the claim must fit the traditional definition of "equity." Id. at 1874; Reeds v. Walker, 2006 WL 1686739, *5, n.48 (Okla., June 20, 2006) ("to be characterized as equitable for purposes of § 502(a)(3), both the basis of the plaintiff's claim and the nature of the recovery sought must be equitable"). Unlike Great-West, the relief sought in Sereboff was equitable because it

---

[7] Accord, Kroop v. Rivlin, 2004 WL 2181110 (S.D.N.Y. 2004) (dismissing claim against son of deceased beneficiary who had improperly deposited deceased's checks where defendant stated he had spent the funds he received); Greenes v. Aldornato, 2004 WL 213089 (S.D.N.Y. 2004) (holding that pension plan administrator's claim for return of inadvertent "overpayments" over a sixteen-year period could not proceed if the funds had been dissipated by the beneficiary and ordering limited discovery on the point).

involved specifically identified assets in a specifically identified fund that was under the control of the defendant.  Id. at 1877.

In this matter, neither the basis of the US Trust's claim, nor the relief it has sought, is "equitable."  Thus, US Trust cannot maintain an action against Mr. Fagans under Section 502(a)(3) of ERISA.

### 2. No Federal or State Common Law Cause of Action Is Presented.

The First Circuit Court of Appeals has stated that "courts [must be] careful not to allow federal common law to rewrite ERISA's carefully crafted statutory scheme, and recognize that federal common law will only give rise to a claim pursuant to ERISA in the limited class of cases where the issue in dispute is of central concern to the federal statute."  State Street Bank & Trust Co., v. Denman Tire Corp. 240 F.3d 83, 89 (1st Cir. 2001) (citations and internal quotations omitted).  Only "where there is, in fact, a gap in the structure of ERISA or in the existing federal common law relating to ERISA" should a Court permit the assertion of federal common law claims.  Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 239 F.3d 51, 57 (1st Cir. 2001).

No such gap is evident in this matter.  Even if, ultimately, Plaintiff is found to be left without a remedy under ERISA, that should not change the Court's conclusion that no federal common law action exists under ERISA.

To the extent that US Trust asserts state common law claims, it has failed to meet the amount-in-controversy necessary for diversity jurisdiction.  See 28 U.S.C.A. §1332.

### 3. Fagans denies that he received overpayments.

Finally, Mr. Fagans has factual defenses to Plaintiff's claims.  Mr. Fagans denies that he received excess payments from the Plan.  Since the Plan first notified him of these

alleged excess payments in 2002, he has been seeking an explanation and information supporting the Plan's allegation. To date, other than providing him with an accounting of the balances and debits from his account, no information has been forthcoming.

## IV. CONCLUSION

For all of the foregoing reasons, defendant Karl P. Fagans respectfully requests that this Court (i) deny US Trust's Motion for Entry of Default Judgment; and (ii) allow his Cross-Motion for Removal of Entry of Default.

KARL P. FAGANS
By his attorneys,

/s/ Andrea Peraner-Sweet
Andrea Peraner-Sweet (BBO # 550515)
Jennifer E. Greaney (BBO # 643337)
SALLY & FITCH LLP
One Beacon Street
Boston, MA 02108
617-542-5542

Dated: July 12, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 12, 2006.

/s/Andrea Peraner-Sweet
Andrea Peraner-Sweet